RAPHAEL MORGAN *vs.* MORGAN, Administrator *d. b. n.* OF
BOOTHE.—*December,* 1832.

Where the defendant, in an action at law, gave a bond reciting his intention
to obtain an injunction to stay further proceedings, and conditioned to
perform such order or decree as the *Court of Chancery* should pass in the
premises, &c. if afterwards, he in fact obtains an injunction from a *County Court,* sitting as a Court of Equity, a failure to perform the decrees or
orders of the County Court, will not give the other party a right of action
upon such bond, although it was approved by the judge of the County
Court who granted the injunction, and filed in the injunction cause.

In assigning a breach of the condition of such a bond, it is error to aver a
failure to prosecute the injunction with effect, upon the equity side of the
County Court. This defect may be taken advantage of upon general demurrer.

In an action upon a bond, containing several stipulations in its condition, if the
defendant relies upon the plea of performance, that plea should disclose
either generally, or specially, that he has complied with all the stipulations of the condition which may be required of him, as the condition is
for his benefit.

Upon general demurrer to a replication, the court will examine if the defendant's plea be valid, and if that be defective, and the first error in
the pleadings, give judgment against him.

When the court believe the plaintiff can recover nothing, they will not award
a *procedendo,* though they reverse the judgment of the County Court rendered in favor of the defendant.

APPEAL from *Saint Marys* County Court.

This was an action of *Debt* instituted on the 30th of June,
1828, by the appellant, against the administrator of *Boothe,*
who dying whilst the cause was depending, the present appellee appeared, and became a party.

The suit was commenced on an injunction bond, (in which
the intestate of the appellee, and one *Walker,* were principals,) dated on the 6th day of January, 1823, in the penalty
of $2,000, with the following recital and condition:

" Whereas the above bound *James Walker* and *Jeremiah
Boothe,* are about to obtain an injunction to stay proceedings at law, on a judgment rendered against them in *Saint
Marys* County Court, by the above named *Raphael Morgan* for, &c. Now the condition of this obligation is such,

that if the said *James Walker* and *Jeremiah Boothe* shall prosecute the said writ of injunction with effect, and satisfy and pay, as well the said sum of money with costs, as all costs, damages, and charges that shall accrue in the Chancery Court, or be occasioned by the delay of execution on the said judgment, unless the Court of Chancery shall decree to the contrary, and shall, in all things, obey such order and decree as the Chancery Court shall make in the premises, then the above obligation to be of none effect, else of full force and virtue."

This bond was approved by one of the judges of *Saint Marys* County Court, and certified by the clerk of that court to be a true copy from the original in his office.

To the plaintiff's declaration on the above bond, the defendant pleaded that the said *James Walker* and *Jeremiah Boothe,* in the condition of the writing obligatory mentioned, their executors and administrators have, in all things, well and truly stood to, abided by, obeyed, and performed the order and final decree of the Chancery Court, made in the cause mentioned in the condition of the writing obligatory aforesaid, to wit, at the county aforesaid, according to the form and effect of the same condition, &c.

The replication, after setting out the judgment, to stay proceedings on which the injunction was obtained, stated that it was so proceeded between the said parties, on the bill in Chancery, mentioned in the condition of the said writing obligatory, and filed by the said *James* and *Jeremiah,* in *Saint Marys* County Court, as a court of equity, against him the said *Raphael,* which the said court, the said *Raphael* avers, is one and the same court as that mentioned in the condition of the writing obligatory aforesaid, by the name and style of the Court of Chancery, and not other or different court; that, afterwards, at a County Court, sitting as a court of equity, begun and held, &c. on, &c., it was by the said court of equity then and there ordered and decreed, that the injunction issued in the said cause, to stay the execution of the judgment aforesaid, be discontinued

and dissolved, and afterwards, at the said court of equity, held, &c., on, &c., the said *James* and *Jeremiah* struck off and discontinued their said suit against the said *Raphael*, as by the record thereof in said court remaining appears, &c.

The defendant *demurred* generally to the replication, and the plaintiff joined in demurrer.

The County Court ruled the demurrer good, and gave judgment for the defendant, and the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, and ARCHER, J.

*Brewer*, for the appellant.

The bond upon which the present action is founded, was not taken under the act of 1723, *ch.* 8, *sec.* 5, because, although the condition is the same, a bond under that act must be approved by *the court*, not by a *single judge* in the recess. It was approved in virtue of the act of 1814, *ch.* 94, *sec.* 2, giving to *each* of the judges, power to grant writs of injunction in the *same manner*, &c. as the chancellor of the State can or may exercise. By the act of 1793, *ch.* 30, *sec.* 14, the chancellor has the power to prescribe the penalty, and approve the bond before the injunction is granted. The judge has, of course, the same power when he grants the injunction, and having approved the bond, and granted an injunction on the security of that bond, can the words " Chancery Court" be construed to mean other than his court exercising " Chancery powers?" If these words *must*, in general, be construed to mean the *High Court of Chancery* mentioned in the act of 1715, title *section* 7, and in the title of the act of 1785, *ch.* 72, and in many other acts, and the Court of Chancery of the State of *Maryland*, in the act of 1817, they ought, as it was certainly intended here, to have a meaning qualified and regulated by the jurisdiction, where the suit, the subject matter of the recital of the bond was to be entertained, and, as *is admitted by the pleadings* in this cause, was entertained. To give,

**398**     CASES IN THE COURT OF APPEALS

Morgan *vs.* Morgan, administrator *d. b. n.* of Boothe.—1832.

then, the construction contended for by the appellee, would enable him to perpetrate a fraud, or lose the appellant his just demand, by the mistake of the appellee or the judge who approved the bond.   Either of these, this court would be solicitous to prevent, if it could be done without giving a very forced construction to the words.   The construction contended for by the appellant, is not a forced one.   *Chancery*, in common parlance, means *equity*, though *Lord Coke's* definition would not give it that meaning.   Thus, when one says, " I will go into Chancery," he would be understood, " I will institute proceedings in equity."   In the act of 1779, *ch.* 25, fees are allowed in " Chancery proceedings in County Courts," considering them *pro hac vice,* Courts of Chancery.

The act of 1814, *ch.* 94, speaks of Chancery proceedings in the County Court.   In both these laws, " *Chancery* is used as synonymous with *equity.*"   The county courts, therefore, acting as Courts of Equity, are acting as Courts of *Chancery,* and the definite pronoun " the" in the condition of the bond, " the Chancery Court," applies not to the high Court of Chancery, but to "the Chancery Court," in which the injunction mentioned in the recital, was about to be obtained.   2. But if the replication should be considered defective, so also is the plea, and upon demurrer the court goes up to the *first* fault.

The plea avers a performance on the part of the defendant, of the order or decree of the Chancery Court, and not a performance of the condition of the bond.   If, therefore, the replication is bad, still the record must be sent back, and the plaintiff will then be entitled to a judgment by default, and to such damages as he can show he has sustained on an inquiry.

*V. H. Dorsey,* for the appellee.

In this case, the plaintiff's right to recover is resisted by the general demurrer on the part of the defendant.   It is contended, that the breach in the replication is not in conformity with the condition of the bond sued on.   The con-

dition of the bond is to prosecute the injunction with effect in the Court of Chancery. The breach assigned is, that the injunction was not prosecuted with effect in *Saint Marys* County Court as a court of equity, and that is the Court of Chancery alluded to in the bond. *Saint Marys* County Court exercising equity powers, is not a Court of Chancery. The courts of the State can only be known to this court, by the name given to them by the act which erected them. The Court of Chancery is known to the law as *the Court of Chancery.* The first statute recognizing a bond of Chancery passed in April, 1715. The Court of Chancery was the only court known to the law that exercised equity powers, until the year 1792, when the Legislature passed an act giving the county courts equity powers in certain cases. The act of 1729, *ch.* 3, speaks of the high Court of Chancery as *the Court of Chancery.* *Vide* act 1773, *ch.* 7. So the act of 1785, *ch.* 72. And so in all the acts. The county courts exercising equity powers, are not known to the law as Chancery Courts. The first statute giving to the county courts equity powers, was passed in 1791. *Vide ch.* 78. That act was entitled " An act respecting equity jurisdiction of the county courts. By that act, an appeal is given from the county courts to the Chancery Court. By the act of 1723, power was given to the county courts to grant injunctions. The bond prescribed is like the present one. The distinction is recognized by the acts from 1798, to 1819. So by the act of 1814, *ch.* 94, entitled an act respecting the equity jurisdiction of the county courts. The act of 1815, *ch.* 163, and the act of 1816, *ch.* 134, preserves the distinction. So the act of 1817, *ch.* 154, and the act of 1819, *ch.* 193, entitled an act to enlarge the powers of the Court of Chancery, and the county courts as courts of equity. In the last act the county courts are called courts of equity ; *Vide,* the various sections beginning at section seven. So by the act of 1821, *ch.* 183. These statutes plainly show that the Court of Chancery, and the county courts exercising equity powers are dis-

tinct courts, with *different* and *distinct* names.   The distinction is carried out in all of the subsequent statutes, *vide*, act of 1825, *ch.* 122, the act of 1826, *ch.* 159.  By the act of 1831, *ch.* 307, and by the. act of 1831, *ch.* 311, they are called courts of equity.   By them the county courts exercising equity powers, are not Courts of Chancery.   The breach in the replication is defective.   The condition of the bond is to prosecute the injunction with effect in the Court of Chancery.   The failure to prosecute a suit with effect in *Saint Marys* County Court as a court of equity is not a breach of the bond.   The condition of the bond is different from the breach alleged.   But admitting that the county courts are Courts of Chancery, yet the Chancery Court, mentioned in the bond, is the high Court of Chancery.   Without any words to explain or designate the Court of Chancery, that court must be known to this court only as it is known to the law.   The averment cannot change the nature or character of the condition.   The obligation of the bond cannot be extended or varied.   But it is said that the plea of performance is defective.   The condition of the bond is that *Boothe* and others shall prosecute with effect, &c. and abide by such order and decree as the Court of Chancery shall make.   The plea avers a performance of the said bond, that *Boothe* and others, did well and truly perform the order and decree of the Court of Chancery according to the condition of the bond.   But if the plea is defective, and the court should be of opinion, that the facts as stated in the replication, will not support an action on the bond, the court will not remand the case.   *The Baltimore and Havre de Grace Turnpike Company vs. Barnes,* 6 *Harr. and Johns.* 61.

EARLE, J., delivered the opinion of the court.

A general demurrer was put in to the replication in this case, and by the court below was ruled good.   The suit being upon an injunction bond, the plaintiff set out his claim in the replication, and charged among other things,

as a breach of the bond sued on, a failure to prosecute the injunction with effect, on the equity side of *Saint Marys* County Court, when in truth the principal obligors had engaged in the condition, to prosecute their writ of injunction with effect in the Court of Chancery. This was clearly a breach not within the contract the plaintiff had declared on, and was palpably erroneous; and there is no doubt of the correctness of the court's decision, if there is not a substantial fault committed by the defendant in an earlier stage of the pleadings. This was asserted, and insisted on by the appellant before us, and our attention was directed to the plea as being equally defective with the replication.

The plea purports to be a plea of performance, by the principal obligors, and yet it alleges a fulfilment by them of but one of the several stipulations in the condition of the bond, and leaves the rest unnoticed. Its assertion is, that the principal obligors have in all things, well and truly stood to, abided by, obeyed, and performed the order and final decree of the Chancery Court made in the case mentioned in the condition of the writing obligatory, according to the form and effect of the same condition.

The injunction bond is a penal bond, and the condition is for the benefit of the obligors, and if all is not performed that is undertaken to be done, it appears to us, the bond is forfeited, and they become liable to the penalty, and therefore it is necessary to plead a compliance with all its stipulations. This is usually done in such cases, in a plea of general or special performance, neither of which this plea can be called. It pleads a part observance only of the covenants of the obligors, and leaves it to conjecture and surmise, whether the other covenants of the condition have been performed or not. We reverse the judgment of the County Court, and as we believe the plaintiff can recover nothing on this bond, we decline sending it back on a *procedendo.*

JUDGMENT REVERSED.